IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CIMARRON TELEPHONE COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. CIV-11-884-D ) |
| SOUTHWESTERN BELL TELEPHONE COMPANY d/b/a AT&T OKLAHOMA, | ) ) ) |
| Defendants. | ) |

## **O R D E R**

Before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 12], which is fully briefed and at issue. In addition, the Court has received the parties' supplemental briefs regarding the doctrine of primary jurisdiction, as required by the Order of August 7, 2012 [Doc. No. 15]. Upon consideration, the Court rules on the issues as follows.

Plaintiff Cimarron Telephone Company, Inc. seeks to recover money allegedly owed by Defendant Southwestern Bell Telephone Company, d/b/a AT&T Oklahoma, under a memorandum of understanding and an order of the Oklahoma Corporation Commission, Order No. 454045 (the "Order"), issued in July, 2001. Invoking diversity jurisdiction under 28 U.S.C. § 1332, Plaintiff seeks damages for breach of the alleged contract and violation of the Order, which established a method by which Plaintiff and other Incumbent Local Exchange Carriers ("ILECs") are paid for telecommunications traffic carried by Defendant and terminated by Plaintiff, that is, delivered to Plaintiff's local customers in Oklahoma. Plaintiff also seeks a declaratory judgment that future payments must be made in accordance with Plaintiff's view of the Order.

Defendant has moved to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Defendant does not contest the existence of diversity jurisdiction, but asserts that the Oklahoma Corporation Commission "'has exclusive jurisdiction to determine questions of compliance and/or construction, adjustment, modification or suspension of its orders.'" *See* Def.'s Motion [Doc. No. 12] at 4 (quoting *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 946 (10th Cir. 1995)). Defendant also argues that the Commission is "uniquely qualified" and "uniquely equipped" to determine the compliance issues raised by Plaintiff's pleading. *See id.* at 3-4. Plaintiff disagrees, arguing that its action is simply one to determine private rights and to obtain an award of money damages, which are matters outside the Commission's jurisdiction.

Viewing Defendant's Motion as implicitly invoking the doctrine of primary jurisdiction, the Court directed the parties to file simultaneous briefs addressing whether this doctrine should be applied under the circumstances of this case. Predictably, because the doctrine authorizes a district court to stay or dismiss an action pending a ruling by an administrative agency, Defendant argues in favor of the doctrine while Plaintiff opposes it. Defendant requests a stay of this action pending a resolution by the Commission of the issues presented; Plaintiff contends the doctrine is inappropriate to these issues.

As stated in the August 7 Order, the purpose of the doctrine of primary jurisdiction is "'to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to the federal district court for final resolution of the case.'" *See TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238 (10th Cir. 2007) (quoting *Crystal Clear Commc'ns, Inc. v. Southwestern Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005)). Within the Tenth Circuit, a district court may properly invoke the doctrine of primary jurisdiction if "the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion;

or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." *See id*. at 1239 (internal quotation omitted). The decision to invoke the doctrine is discretionary, and should be made on a case-by-case basis after considering "whether 'the reasons for the existence of the doctrine are present and whether the purposes it serves (i.e., uniformity and resort to administrative expertise) will be aided by its application in the particular litigation.'" *See id*. (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956)). Plaintiff notes in its brief that the court of appeals has acknowledged other factors that may properly be considered in striking the balance between deferring to an agency's expertise and resolving a pending action expeditiously, "'including: how agency action will aid the litigation; whether the litigation involves conduct requiring continuing supervision by the agency; whether the issues to be litigated are unique to regulated industries; and whether proceedings already are pending before the agency.'" *Mical Communications, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1038 (10th Cir. 1993) (internal quotation omitted).

Upon review of the parties' supplemental briefs, the Court finds that the underlying premise of the August 7 Order is not disputed. This case involves a dispute within the telecommunications industry in Oklahoma, which operates under the jurisdiction of the Commission by mandate of the Oklahoma Constitution, Okla. Const. art. 9, § 18, and by statute, Okla. Stat. tit. 17, §§ 131-140.6, and subject to regulations duly enacted by the Commission. *See* Okla. Admin. Code §§ 165:55-1-1 to 165:55-1-16. Specifically, the case arises from the parties' implementation of the Commission's Order involving at least thirty ILECs[1] that decided billing arrangements for telecommunications traffic between access providers and allocated the cost of traffic originating from unidentified third

---

[1] The Order identifies thirty ILECs affected by the Order, as shown by an attached list of companies, but Defendant states in argument in its brief that the number has increased to "at least 39 different ILECs, including Plaintiff." *See* Def.'s Suppl. Br. [Doc. No. 17] at 4.

party sources. The Order itself shows that the matter at issue is subject to regulation by the Commission. Neither party raises any concern about the availability of the Commission as a forum to resolve their dispute, although Plaintiff emphasizes that the Commission lacks authority to award damages, as prayed for in the Complaint. This legal fact was assumed, but not stated, in the August 7 Order. Plaintiff states no basis to conclude, however, that an award of damages (if one is ultimately determined to be appropriate) would be inadequate to compensate Plaintiff for its monetary loss, including any delay damages.

Plaintiff does disagree with the Court's view, as stated in the August 7 Order, that the central issue in the case is the proper interpretation and application of the Order. Plaintiff views the Order as clear and unambiguous, and Defendant's violation of the Order to be equally clear. Plaintiff argues that the Court is fully capable of making this determination, and an opinion to that effect from the Commission is unnecessary. According to Plaintiff, Defendant followed the billing procedure required by the Order from 2001 through 2007, and then unilaterally changed its billing and payment systems without authorization from the Commission. Now, rather than paying for third party carriers' traffic and receiving a credit from ILECs in the next billing cycle, Plaintiff asserts that Defendant is impermissibly determining its own credits and making deductions from payments to account for third party traffic based on its billing records and an "equivalency paper report" or "EPR." *See* Pl.'s Resp. Br. [Doc. No. 13] at 7, ¶ 15.

Notably, Defendant in its various briefs does not disagree with many of Plaintiff's factual allegations but, instead, identifies the real issue to be the sufficiency of the EPR. Defendant denies Plaintiff's assertion that Defendant is impermissibly avoiding the cost of unidentified traffic, and argues that Plaintiff has simply failed to access information that is readily available from Defendant's records and reports "and to implement proper billing systems to comply with the

4

Order." *See* Def.'s Reply Br. [Doc. No. 14] at 1-2.  Similarly, Plaintiff in its initial brief seems to identify the crux of the dispute as an alleged underpayment due to unidentified third party traffic. *See* Pl.'s Resp. Br. [Doc. No. 13] at 7-8, ¶¶ 15-16 (explaining the "net effect" of Defendant's current system results in an underpayment for unidentified traffic, and stating: "It is this difference that Cimarron seeks to recover in this lawsuit.").  Plaintiff identifies its alleged damages as the amount by which it has been underpaid as a result of Defendant's billing system. *See id*. at 8, ¶ 17.

In light of Plaintiff's allegations and the parties' arguments, the Court respectfully disagrees with Plaintiff's view of this case as a "mere matter of reading the [Order] and deciding what it says" and a matter involving no factual determinations within the expertise of the Commission. *See* Pl.'s Suppl. Br. [Doc. No. 16] at 4.  The adjudication of Plaintiff's claim will involve a determination of whether an underpayment has occurred.  As argued by Defendant, this determination will require rulings on the sufficiency of Defendant's record-keeping system to identify particular traffic, and to the extent unidentified third party traffic exists, it will require a careful analysis of voluminous records and reports to determine the amount of any underpayment to Plaintiff.  While the Commission cannot award this amount (if any) as damages, the Commission – and more accurately, its staff and administrative law judges – may be instrumental in providing the detailed factual analysis and findings that this Court is ill-equipped to perform in the context of a civil action for damages.  As explained in Plaintiff's initial brief, the Order was the result of a lengthy proceeding before the Commission that culminated in an agreed resolution among numerous parties, only two of which are present in this lawsuit.  Plaintiff's request for a declaration of rights may result in inconsistent rulings from this Court and the Commission in any administrative proceeding to enforce the Order, or to modify the Order if warranted by technological advances or changes in the telecommunications industry during the past eleven years since it was approved.

In short, the Court finds that the purposes served by the doctrine of primary jurisdiction – uniformity and resort to agency expertise – warrant the application of the doctrine under the circumstances. Accordingly, the Court will enter a stay of this proceeding and require that Plaintiff first obtain a determination from the Commission whether Defendant's alleged violation of the Order has resulted in an underpayment to Plaintiff of amounts that Defendant was required to pay under the terms of the Order.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 12] is DENIED, but the case will be stayed and administratively closed to permit the parties to seek a resolution of their dispute regarding the proper implementation of the Order No. 454045 from the Oklahoma Corporation Commission. The parties shall proceed promptly to seek a ruling from the Commission regarding Defendant's alleged violation of the Order, and they shall promptly file a written notice of the Commission's ruling when it is received.

IT IS SO ORDERED this 27th day of August, 2012.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE